LOUIS E. FLETCHER vs. NEW YORK CENTRAL AND HUDSON RIVER
RAILROAD COMPANY.

Worcester.    November 7, 1917. — January 12, 1918.

Present: RUGG, C. J., BRALEY, CROSBY, PIERCE, & CARROLL, JJ.

*Contract*, Validity, Waiver of performance of condition precedent.  *Agency*,
Scope of authority.  *Carrier*, Transportation of live stock.  *Waiver.*

A contract in writing between the owner of a horse and a railroad corporation for
the transportation of the horse by rail from one town to another, both in this
Commonwealth, contained a provision that no claim for damages which may
accrue to the shipper shall be allowed or paid by the carrier "unless a claim for
such loss or damage shall be made in writing, verified by the affidavit of the
said shipper or his agent, and delivered to the . . . agent of the said carrier, at
his office in . . . within five days from the time said stock is removed from
said car or cars; and that if any loss or damage occurs upon the line of a con-
necting carrier, then such carrier shall not be liable unless a claim shall be made
in like manner."  *Held*, that this provision was not unreasonable and was a
valid one binding upon the parties.

A contention, that the requirement, quoted above, of a notice within five days
from the delivery of a horse of any claim for injury to the horse when in the
hands of the carrier had been waived by the station agent of the carrier who
was on the platform when the horse arrived and "appeared to have charge of
the delivering and unloading of the cars," and who was "a freight and
passenger agent at" that station, was *held* to be unfounded because it
was not shown that the station agent had any authority to waive the
requirement.

In the same case it was *said* that it was not necessary to consider whether the rule,
that a carrier has no right to waive a provision in a contract for interstate
transportation, which is filed with its tariff schedules, requiring a notice in
writing within a certain time, applies to a similar provision in a contract for
intrastate transportation, which has been filed in a like manner.

CONTRACT OR TORT for damages for an injury sustained on
October 2 or 3, 1912, by a race horse belonging to the plaintiff,
named Oom Paul, when being transported over the defendant's
railroad from West Springfield to Palmer.  Writ dated January
7, 1914.

The defendant's answer, in addition to a general denial, alleged
that the horse was transported under the terms and conditions of
a live stock contract filed with the interstate commerce commis-
sion as a part of the tariffs of the defendant filed with that com-

mission as required by the statutes of the United States, and containing the provision quoted in the opinion.

In the Superior Court the case was tried before *Dubuque*, J. In compliance with an order of the judge the plaintiff elected to rely on the second count of his declaration, which was in tort. The evidence is described in the opinion. At the close of the evidence the defendant, among other requests, asked the judge to make the following rulings:

"4. The plaintiff cannot recover for any loss or damage to his horse, unless he made a claim in writing, verified by affidavit, within five days from the time the horse was removed from the car at Palmer.

"5. The defendant's agent at Palmer had no authority to waive this requirement about presenting a claim in writing."

The judge submitted to the jury two special questions, which with the answers returned by the jury were as follows:

"1. Was the plaintiff's horse 'Oom Paul' injured in the course of transportation in the defendant's car through the defendant's negligence on October 2 or 3, 1912, between Northampton, Massachusetts, and Palmer, Massachusetts?" The jury answered, "Yes."

"2. If you answer yes, then what was the amount of damage suffered by the plaintiff resulting from the injury to said horse?" The jury answered, "$364.91."

There was sufficient evidence to warrant the special findings of the jury upon the question of the defendant's negligence and the extent of the damage suffered. After the special verdicts were returned, upon motion of the defendant the judge ruled that as a matter of law the plaintiff was not entitled to recover and ordered the jury to return a general verdict for the defendant. He reported the case for determination by this court. It was agreed by the parties, that if there was material and competent evidence upon which the jury might have found that there was a waiver by the defendant of the five days' clause in the shipping contract, this court might treat the case as if the jury had found there was a waiver of the provisions of this clause by the defendant. If the ordering of the verdict was right, the verdict for the defendant was to stand. If the ordering of the verdict was wrong, a verdict was to be entered for the plaintiff for such amount as this court might deem proper.

The case was submitted on briefs.

*A. M. Levy,* for the plaintiff.

*R. A. Stewart & J. W. Worthington,* for the defendant.

CARROLL, J.  The plaintiff seeks to recover damages for an injury to a horse which was to be carried from Northampton to Palmer on October 2, 1912, under a live stock contract signed by the plaintiff and the Boston and Maine Railroad.  There was evidence that the car containing the horse was transferred to the defendant at Springfield and was taken to West Springfield, where the horse was injured by the negligence of the defendant sometime during that night.

The contract provided, "no claim for damages which may accrue to the said shipper under this contract shall be allowed or paid by the said carrier, or sued for in any court by the said shipper, unless a claim for such loss or damage shall be made in writing, verified by the affidavit of the said shipper or his agent, and delivered to the . . . agent of the said carrier, at his office in . . . within five days from the time said stock is removed from said car or cars; and that if any loss or damage occurs upon the line of a connecting carrier, then such carrier shall not be liable unless a claim shall be made in like manner, and delivered in like time to some proper officer or agent of the carrier on whose line the loss or injury occurs."  A witness "familiar with the tariffs, exceptions to official classification, official classification and live stock contract" applicable to the shipment of horses from Northampton to Palmer, testified that these publications were duly filed with the interstate commerce commission; that the rates were the same on interstate and intrastate traffic; that these publications were on file at the Boston and Maine Railroad freight station at Northampton, where they could be inspected by the public, if desired, and that notice to this effect was posted in the station.  There was evidence that "there was no rule or regulation in force relating to freight claims or the handling or moving of freight that authorized the freight agent or station agent to waive the requirements of a live stock contract with reference to the necessity of a claim under oath being presented within five days of the delivery of the goods."  No written demand was made upon the defendant within five days.  On the morning of October 3, 1912, when the horse arrived at Palmer, the plaintiff "looked up

the railroad man on the freight house platform who appeared to have charge of the delivering and unloading of the cars," and after complaining to him of the damage to the horse and stating "he is entered here to race here tomorrow," this man told him to take the horse and "do everything he could to get the horse well and that they would pay him board and damages." There was further conversation and the plaintiff removed the horse. He testified that it was impossible to state the extent of the injury to the horse for several months, and that two or three months after this he wrote the agent at Palmer. One Whittemore, "a freight and passenger agent at Palmer," testified that the plaintiff on the morning of October 2, 1912, told him that one of his horses was badly injured and asked him what "he had better do about it." The agent replied he had "better take the best care of his horse" and to let him know the result. He did not consider that any claim had been made against the defendant and heard nothing further until the following March, when he received a letter from the plaintiff.

The plaintiff relied on the second count of his declaration. The jury found the horse was injured by reason of the defendant's negligence and assessed damages of $364.91. The case is here on the report of the presiding judge.

The plaintiff contends that the stipulation of the contract requiring a claim for damage to be in writing, verified by the affidavit of the shipper and delivered to the carrier's agent within five days from the time of the removal of the horse from the car, is unreasonable and therefore invalid.

In an interstate shipment of live stock under a contract designated "Limited Liability Live Stock Contract," requiring a claim for damage to be made in writing, verified by the affidavit of the shipper and delivered to the carrier within five days from the time the stock is removed from the cars, it was held that the stipulation was a reasonable one and controlling on both the parties to the contract, the court saying: "We need not stop to consider whether the requirement of the live-stock contract that a claim for damages should be presented within five days from the time the stock was removed from the cars was reasonable or not, for this question has been answered in favor of the reasonableness of such stipulation." *Erie Railroad* v. *Stone*, 244 U. S. 332, citing

*Northern Pacific Railway* v. *Wall,* 241 U. S. 87, *St. Louis, Iron Mountain & Southern Railway* v. *Starbird,* 243 U. S. 592. The same rule should be applied in an intrastate shipment. The contract was equally binding on both parties, whether it had reference to interstate or intrastate commerce. The regulation as to time of notice was valid and the plaintiff should have complied with it.

Before the horse was removed the plaintiff knew it was injured, although he did not know the full extent of the injury. There was nothing to prevent him, within five days after the horse was taken from the car, from making the claim in the manner required by the contract of shipment. See *St. Louis, Iron Mountain & Southern Railway* v. *Starbird, supra.*

The plaintiff argues that the clause in the contract requiring notice in writing within five days was waived by the defendant and he relies on the conversation with "the railroad man on the freight house platform who appeared to have charge of the delivery and unloading of the cars" to prove this waiver. In *Metz Co.* v. *Boston & Maine Railroad,* 227 Mass. 307, it was decided that the carrier had no authority to waive the provisions of a contract requiring a written notice. In that case the shipment was made in interstate commerce. "Waiver by the railroad corporation of an obligation resting on the shipper or consignee would operate to that extent to create a preference in favor of that particular shipper or consignee and a discrimination against all others to whom a like concession is not made." It well may be that this rule and the reasons for it are appropriate both to an intrastate and interstate shipment, but we do not consider it necessary to decide this question as there was no evidence in the case at bar to show that the plaintiff was released from the terms of the contract by any authorized agent of the defendant. There is nothing to show that the person with whom the plaintiff talked when the horse was taken from the car had any authority, express or implied, to alter the written contract of the carrier, nor was he held out to the plaintiff as having such authority. Even if it could be found that the plaintiff talked with Whittemore "a freight and passenger agent at Palmer," he was not shown to have any such power. A station agent cannot bind his principal by admissions which in effect substitute a new agreement in place of the agreement of the parties

and deprive the defendant of the requirements of a written contract entered into by the shipper and the carrier. No such authority was given to the station agent and there was no rule or regulation permitting him to change the contract. See *Boston & Maine Railroad* v. *Ordway*, 140 Mass. 510; *Wellington* v. *Boston & Maine Railroad*, 158 Mass. 185; *Bachant* v. *Boston & Maine Railroad*, 187 Mass. 392, 396; *Angle* v. *Mississippi & Missouri Railroad*, 18 Iowa, 555.

The evidence admitted in *Lane* v. *Boston & Albany Railroad*, 112 Mass. 455, did not amount to a modification of the contract; it was merely the admission of the freight agent in the performance of his duty, when investigations were made concerning the loss of the freight demanded. See in this connection *Green* v. *Boston & Lowell Railroad*, 128 Mass. 221.

There is nothing in the plaintiff's contentions that the contract was defective because it "was unfilled and incomplete in many important places," and that the car containing the shipment was deviated from its intended route when it was transferred from the Boston and Maine Railroad to the yard of the defendant at West Springfield, under the principle established in *McKahan* v. *American Express Co.* 209 Mass. 270, and cases cited.

According to the terms of the report the verdict for the defendant is to stand.

*So ordered.*