NICHOLAS ZEO, INC. *vs.* RAILWAY EXPRESS AGENCY, INCORPORATED.

Hampden.   September 21, 1944. — December 7, 1944.

Present: FIELD, C.J., QUA, DOLAN, WILKINS, & SPALDING, JJ.

*Carrier,* Of goods.   *Contract,* With carrier.   *Act of God.   Negligence,* Carrier.

Rights and obligations of parties to a contract for an interstate shipment by express are governed by acts of Congress, the uniform express receipt, and the tariffs duly filed with the interstate commerce commission.

A finding of negligence of an express company, not operating any railroad, contributing to the loss by a shipper of strawberries in refrigeration received by the company, subject to rules in its tariff on file with the interstate commerce commission to the effect that refrigerated cars were to be "handled only on trains designated by the railroad company" and to a uniform express receipt providing in part that, "Unless caused in whole or in part by its own negligence or that of its agents, the company shall not be liable for loss, damage or delay caused by . . . The Act of God," would not have been warranted on evidence showing merely that, when the company learned that, owing to a flood which was an act of God, the railroad car containing the shipment was stopped in transit, it seasonably notified the shipper,

that the shipper then requested the company to reroute the car by a circuitous route which was physically possible, that the company's agent stated that "it could be done" and agreed to do it, and that six or seven hours later the shipper, learning that the railroads, for some reason as to which there was no evidence, had not moved the car on that route, countermanded that order and directed a routing to a different terminus, which was done promptly.

CONTRACT OR TORT. Writ in the Superior Court dated February 21, 1938.

The case was heard by *Leary*, J.

*V. J. Zeo*, (*J. H. Mulcare* with him,) for the plaintiff.

*C. R. Brooks*, for the defendant, submitted a brief.

WILKINS, J. This is an action of contract or tort to recover for damage to a carload of strawberries shipped from Florida to Springfield. The case was tried before a judge of the Superior Court who found for the defendant.

The plaintiff's exceptions relate to denial of two requests for rulings: "13. That the defendant's failure to reroute . . . in accordance with the plaintiff's instructions was a breach of its duty to the plaintiff and the defendant is liable in damages for its failure so to do. 14. That the evidence warrants a finding for the plaintiff." The judge's action on the requests was: "Request Number 13 is denied, as the court finds that there was no failure to reroute the carload of strawberries in accordance with the plaintiff's instructions, nor that there was any breach of the defendant's duty to the plaintiff therein. Request Number 14 is denied."

The evidence was as follows: One Dallas, superintendent of losses and damage prevention for the defendant, called as a witness by the plaintiff, testified: On March 16, 1936, a car containing four hundred eighty crates of strawberries in refrigeration was received by the defendant at Plant City, Florida, for delivery in the District of Columbia. On March 18 while the car was in transit over the Seaboard Airline, its contents were sold to the plaintiff, and the defendant issued a uniform express receipt providing in part: "Terms and Conditions . . . Unless caused in whole or in part by its own negligence or that of its agents, the com-

pany shall not be liable for loss, damage or delay caused by . . . The Act of God." On March 19 at 12:29 A.M. the car arrived by the New Haven railroad, in Hartford, Connecticut, where it remained until 6:23 P.M. On March 18 flood conditions prevailed between Hartford and Springfield and on March 19 were getting worse. The car could not be moved from Hartford to Springfield, and was rerouted back to New Haven where it arrived on March 19 at 7:30 P.M. On March 20 at 1:53 A.M. it left New Haven and reached Boston at 6:05 A.M. By this time the strawberries had deteriorated and were sold for the plaintiff's account.

One Hancock, freight agent for the New Haven and Boston and Maine railroads, called by the plaintiff, testified: Due to flood conditions the last train, a passenger train, from Hartford to Springfield came into the Springfield station on March 18 at 3:38 P.M. A train which had discharged its passengers at Windsor Locks, about ten miles south of Springfield, got as far as the Springfield yard on March 18 at 6:50 P.M. On March 19 no trains moved between Springfield and Hartford. A car could have been unloaded at the yard at Springfield on March 18. The New Haven railroad has connections between New Haven and Worcester by way of New London and thence to Worcester over the "Norwich Branch." The defendant has no "road" of its own, but "its" cars are operated over railroads by agreement.

One Ransom, general agent for the defendant in Springfield, called by the plaintiff, testified: So far as trackage was concerned, it was physically possible for a car to be sent from New Haven via New London and Worcester to Springfield. He knew that railroad operations had ceased between Hartford and Springfield on March 18 at 8:30 P.M. several hours before the car arrived at Hartford. On March 19 before 3 A.M. he first learned about the car. An employee of the defendant told him that the car was at Hartford and could not get through to Springfield on account of the flood, and he gave instructions that this information be given to one Belli, president and general manager of the

plaintiff. The railroad express terminal at Hartford is west of the passenger station, and the witness understood that it was not covered with water.

Belli testified, apparently on behalf of the plaintiff: On March 19 at 5:30 A.M. he learned from the defendant that the car was at the Hartford yard, could not be moved to Springfield, and could only be moved to New Haven. He sent employees of the plaintiff with a truck to Hartford for the purpose of bringing the strawberries to Springfield, but after some crates were unloaded, this plan was abandoned due to inability to return to Springfield, and the crates were reloaded on the car. The plaintiff then sold some of the strawberries in Hartford, but could not make delivery because the buyer could not get to the car on account of flood conditions in that city. On March 19 at 10 A.M. the witness talked by telephone with the defendant's general agent at Hartford, inquired if there was some way of getting the car out of Hartford into Springfield and, after discussing the matter with him, asked him to "reroute the car, divert the car through Worcester to Springfield." The agent told him "that it could be done all right" and agreed to do it. The agent "accepted the order and promised to reroute the car for Springfield via Worcester." About six or seven hours later the witness telephoned the defendant's office at Hartford, and was advised that the car had not left but was going out shortly. He then told the defendant's representative, who was unaware of the fact, that he understood that there was likely to be trouble between Worcester and Springfield, and arranged with the defendant to send the car to Boston, where it was sold at a loss.

One Boutwell, general agent for the defendant at Hartford, testified, apparently on behalf of the plaintiff: The car came into the Hartford yard on March 19 at 12:29 A.M. and remained laid up on the track eighteen hours until 6:23 P.M. during which time there was nothing to interfere with the movement of the car in any direction in the yard onto the main line, and the railroad could have moved it if the defendant had so requested. There was no trouble on the main line between Hartford and New Haven, although

the highway bridge over which trucks travelled was closed on March 19 at 11:30 A.M.

One Halliday, an assistant superintendent for the New Haven railroad, testified for the defendant: Trains ran from New Haven to Worcester via Putnam. On March 18 service was discontinued because of a washout in the Putnam yards. On March 19 and 20 trains were detoured via Mansfield and the Boston and Maine Railroad to Worcester and the Boston and Albany Railroad. The New Haven railroad makes physical connection at New London with the Central Vermont Railroad which runs north to Palmer. Trains over the "Norwich Branch" out of New London via Putnam were rerouted over a branch line of the New Haven railroad to Lowell "which was the way trains were then rerouted back into Worcester." That line was available on March 19 and 20.

There were in evidence records of the United States weather bureau showing the hourly heights of the Connecticut River at Hartford and Springfield in March, 1936. There was also in evidence the defendant's tariff, on file with the interstate commerce commission, applicable to strawberries shipped in carload lots from Florida to Massachusetts. Included therein was Rule 23 (a) of Official Express Classification No. 32, which provided in part, "Cars will be handled only on trains designated by the railroad company."[1] This was binding on the parties. The contract being for an interstate shipment, their rights and obligations are governed by the Acts of Congress, the uniform express receipt, and the tariffs duly filed with the interstate commerce commission. *New York Central & Hudson River Railroad* v. *York & Whitney Co.* 230 Mass. 206, 213–214. *W. H. Blodget Co.* v. *New York Central Railroad,* 261 Mass.

---

[1] This entire Rule 23 (a) was in evidence and read as follows: "23. *Refrigeration*:— *Carload Shipments of Perishable Commodities:* (a) The Express Companies have arranged for a limited number of refrigerator cars and to the extent available these cars will be furnished on application of shippers. Agents must not guarantee to provide refrigerator or special equipment. When such cars are not available, carload shipments requiring refrigerator cars will be accepted only when the cars are furnished by the shipper or the railroad company. Cars will be handled only on trains designated by the railroad company." — REPORTER.

365, 370. *Railway Express Agency, Inc.* v. *Michelson,* 311 Mass. 704, 706. *Boston & Maine Railroad* v. *Hooker,* 233 U. S. 97, 112. *Southern Railway* v. *Prescott,* 240 U. S. 632, 638. *Southern Express Co.* v. *Byers,* 240 U. S. 612, 614. *Chesapeake & Ohio Railway* v. *Martin,* 283 U. S. 209, 212–213. *Baldwin* v. *Scott County Milling Co.* 307 U. S. 478.

The thirteenth request was rightly refused. It is assumed that the judge's finding means that he accepted the testimony that instructions to reroute were given, but that the defendant did not fail to carry out such instructions. The plaintiff concedes that there was no error with respect to any direction to send the car through to Boston, but contends that there was error as to the earlier direction to reroute through Worcester to Springfield. The finding that there was no failure to reroute in accordance with the plaintiff's instructions was at least permissible on the evidence and, for reasons hereinafter discussed, we think was required. In any event, the request was inapplicable to the facts found.

The fourteenth request was, in effect, for a ruling that a finding could be made in favor of the plaintiff. *Bresnick* v. *Heath,* 292 Mass. 293, 298. This was properly denied. We do not reach our conclusion on the ground that the findings of the judge rendered this request immaterial. See *Hoffman* v. *Chelsea,* 315 Mass. 54, 56; *Brodeur* v. *Seymour,* 315 Mass. 527, 529–530; *Liberatore* v. *Framingham,* 315 Mass. 538, 541–544. Our decision rests on the proposition that there was no evidence to warrant a finding for the plaintiff. Unquestionably the flood was unprecedented in extent and constituted an act of God. This is obvious from the evidence of the weather bureau records. See *Standard Brands, Inc.* v. *Boston & Maine Railroad,* 29 Fed. Sup. 593, a case arising out of the same flood; Williston on Contracts (Rev. ed.) § 1090.

In these circumstances where the loss was shown to have fallen within one of the excepted causes of the uniform express receipt, the burden of proof was on the plaintiff to show that the defendant's negligence contributed to the loss. *Clark* v. *Barnwell,* 12 How. 272, 280. *Railroad* v. *Reeves,*

10 Wall. 176, 189–190. *Transportation Co.* v. *Downer*, 11 Wall. 129, 134. *Cau* v. *Texas & Pacific Railway*, 194 U. S. 427, 432. *Schnell* v. *The Vallescura*, 293 U. S. 296, 304–305. *Illinois Steel Co.* v. *Baltimore & Ohio Railroad*, 320 U. S. 508, 510–511. *Barnet* v. *New York Central & Hudson River Railroad*, 222 N. Y. 195, 198–199. See *Bonfiglio* v. *New York, New Haven & Hartford Railroad*, 292 Mass. 287, 289.

There is no evidence warranting a finding that the plaintiff has sustained this burden on the evidence. When the car arrived in Hartford it was no longer possible to continue on to Springfield. The defendant seasonably notified the plaintiff. *Batchelder & Snyder Co.* v. *Union Freight Railroad*, 259 Mass. 368, 374. The latter made unsuccessful efforts to move the goods to Springfield by truck and also to sell them in Hartford. Thereafter the plaintiff arranged with the defendant to reroute the car to Springfield by way of Worcester. Six or seven hours later the plaintiff learned that the car had not left but was to do so shortly. The plaintiff then countermanded the instructions, and ordered the car sent to Boston by way of New Haven. This was done promptly. The mere fact that it was physically possible to move the car on tracks of various railroads from Hartford to Springfield by a circuitous route and that the car did not leave Hartford during those six or seven hours would not permit a finding that the defendant, which did not operate any railroad, had failed in any duty to cause the car thus to be moved. The rule filed with the interstate commerce commission was to the effect that refrigerated cars were to be "handled only on trains designated by the railroad company." There was no evidence that in those six or seven hours any trains were sent out of Hartford to New Haven, much less that in that interval the respective railroads could have designated trains to handle this car by this route. The railroads and the defendant were coping with a disaster. *Hoosac Tunnel & Wilmington Railroad* v. *New England Power Co.* 311 Mass. 667. Evidence was lacking as to many important material matters, including the extent of the other tasks confronting the carriers, the methods of communication which were open, the amount

of freight and other traffic demanding attention, and the equipment and personnel available for the several purposes. See *Barrett* v. *Van Pelt*, 268 U. S. 85, 91–92; *Belkin* v. *New York, New Haven & Hartford Railroad*, 109 Conn. 466, 468–469; *Norris* v. *Savannah, Florida & Western Railway*, 23 Fla. 182; *Standard Brands, Inc.* v. *Boston & Maine Railroad*, 29 Fed. Sup. 593.

The defendant's duty included the requirement to make delivery within a reasonable time. *Chicago & Alton Railroad* v. *Kirby*, 225 U. S. 155, 164. *Barrett* v. *Van Pelt*, 268 U. S. 85, 92. *Belkin* v. *New York, New Haven & Hartford Railroad*, 109 Conn. 466, 468. See *Radovsky* v. *New York, New Haven & Hartford Railroad*, 258 Mass. 26, 28. It was also its duty to guard against foreseeable weather conditions. *Fox* v. *Boston & Maine Railroad*, 148 Mass. 220. See *Denny* v. *New York Central Railroad*, 13 Gray, 481. Compare *Hoadley* v. *Northern Transportation Co.* 115 Mass. 304. The evidence, however, does not show that the defendant failed in any of these respects. This is not a case of unreasonable failure to deliver. Compare *Ideal Leather Goods Co.* v. *Eastern Steamship Corp.* 220 Mass. 133, 136.

Cases where, notwithstanding an act of God, there was evidence of negligence on the part of the carrier contributing to the loss, are distinguishable. See *New England Mica Co.* v. *Waltham Factories, Inc.* 301 Mass. 56; *Railroad* v. *Reeves*, 10 Wall. 176; *Chesapeake & Ohio Railway* v. *J. Wix & Sons, Ltd.* 87 Fed. (2d) 257; *Ithaca Roller Mills* v. *Ann Arbor Railroad*, 217 Mich. 348; *Ferguson* v. *Southern Railway*, 91 S. C. 61; *St. Louis, Iron Mountain & Southern Railway* v. *Bland*, 34 S. W. 675 (Tex. Civ. App.); *Mistrot-Calahan Co.* v. *Missouri, Kansas & Texas Railway*, 209 S. W. 775 (Tex. Civ. App.); Williston on Contracts (Rev. ed.) § 1096.

*Exceptions overruled.*