INDEPENDENT LOCK COMPANY *vs.* ACME FAST FREIGHT, INC.

Suffolk.    October 7, 1953. — December 30, 1953.

Present: QUA, C.J., LUMMUS, RONAN, SPALDING, & WILLIAMS, JJ.

*Carrier*, Of goods, Freight forwarder, Bill of lading.

A freight forwarder subject to U. S. C. (1946 ed.) Title 49, §§ 1013, 20 (11), which received from a common carrier by motor vehicle subject to chapter 8 of Title 49 merchandise for transportation in interstate commerce and issued to the motor vehicle carrier a uniform straight bill of lading designating the shipper's customer as consignee, was bound by that bill of lading and not by a uniform order bill of lading issued by the motor vehicle carrier to the shipper and consigning the merchandise to the shipper's own order as consignee, "notify" the customer, where it did not appear that within § 1013 the freight forwarder "utilized" "the services" of the motor vehicle carrier "for the receiving of property" or consented to the issuance of such order bill of lading.

TORT. Writ in the Superior Court dated June 2, 1948.

The action was tried before *Collins*, J., who ordered a verdict for the defendant. The plaintiff alleged exceptions.

In this court the case was submitted on briefs.

*William Endlar*, for the plaintiff.

*William G. Todd*, for the defendant.

SPALDING, J. This is an action of tort for the conversion of two shipments of locks alleged to have been misdelivered by the defendant. The question for decision is whether the judge erred in directing a verdict for the defendant.

A summary of the relevant evidence is as follows: The plaintiff is a lock manufacturer in Fitchburg. On two occasions in May, 1947 (May 7 and May 21), it delivered packages of locks to the Athol Motor Air Express, Inc., hereinafter called Athol, at Fitchburg. At the time of these deliveries Athol issued to the plaintiff uniform *order* bills of lading under which the merchandise was consigned by the plaintiff to its own order as consignee at Chicago "Notify Marvel Mfg. Co." These bills were later forwarded through the plaintiff's bank to a correspondent bank in Chicago with sight drafts attached. Goods shipped in this manner cannot be obtained by the "notify party" until the sight drafts are honored.

On both occasions, after receiving the shipments from the plaintiff, Athol delivered them to the defendant in Boston, a freight forwarder engaged in interstate commerce. The "defendant's business was to ship [by railroad] to one destination . . . [parcels of freight] brought to it by various people." In each instance the defendant issued to Athol a uniform *straight* bill of lading under which the merchandise was consigned to Marvel Mfg. Company, hereinafter called Marvel. The defendant in accordance with these bills of lading delivered the merchandise to Marvel and collected from it only the freight charges. The first shipment was delivered on May 13; the second on May 26. Marvel has never paid for the goods and has since gone into bankruptcy. Where goods are shipped under straight bills of lading the consignee need pay only the freight charges in order to obtain them. The straight bills of lading covering the merchandise here involved were on forms on which the plaintiff's name was printed. Blocks of these forms were given to Athol by

the plaintiff "so that there would be an office record" for Athol and the defendant. On many other occasions the defendant had received the plaintiff's merchandise for shipment on straight bills of lading similar to those issued with respect to the two shipments in question. The defendant's regional manager testified that he learned of the two order bills of lading issued by Athol when he was shown photostats of them early in September, 1947. The plaintiff's credit manager testified that "he had nothing to show that the defendant received the goods with the [order] bills of lading."

The plaintiff's case is grounded on misdelivery. Whether the shipments were misdelivered depends on which bills of lading are to govern. If the order bills issued by Athol fix the rights of the parties, then the shipments were misdelivered by the defendant, for the defendant delivered them to Marvel without obtaining payment of the sight drafts. If, on the other hand, the straight bills of lading are to govern, there was no misdelivery, for the defendant could deliver the shipments to Marvel on payment of only the freight charges. The plaintiff does not contend the contrary. It contends, however, that the order bills are controlling.

The shipments being interstate, the plaintiff invokes certain provisions of Federal statutes governing interstate commerce. See *Nicholas Zeo, Inc.* v. *Railway Express Agency, Inc.* 317 Mass. 374, 378; *Lapp Insulator Co. Inc.* v. *Boston & Maine Railroad, ante,* 205, 208–209. One of these statutes is the Carmack amendment, as amended, U. S. C. (1946 ed.) Title 49, § 20 (11), the pertinent provisions of which are: "Any common carrier . . . subject to the provisions of this chapter receiving property for transportation . . . [in interstate commerce] shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier . . . to which such property may be delivered or over whose line or lines such property may pass within the United States

. . . when transported on a through bill of lading . . . and any such common carrier . . . so receiving property for transportation . . . [in interstate commerce] or any common carrier . . . delivering said property so received and transported shall be liable to the lawful holder of said receipt or bill of lading or to any party entitled to recover thereon . . . for the full actual loss, damage, or injury to such property caused by it or by any such common carrier . . . to which such property may be delivered or over whose line or lines such property may pass within the United States . . . when transported on a through bill of lading . . . ."

Under this section "the bill of lading required to be issued by the initial carrier upon an interstate shipment governs the entire transportation and thus fixes the obligations of all participating carriers to the extent that the terms of the bill of lading are applicable and valid." *Georgia, Florida & Alabama Railway* v. *Blish Milling Co.* 241 U. S. 190, 194–195. *Galveston Wharf Co.* v. *Galveston, Harrisburg & San Antonio Railway,* 285 U. S. 127, 134–135.

United States Code (1946 ed.) Title 49, § 1013, makes § 20 (11) applicable to freight forwarders "in the case of service subject to . . . [the chapter governing freight forwarders] with like force and effect as in the case of those persons to which such provisions are specifically applicable, and the freight forwarder shall be deemed both the receiving and delivering transportation company for the purposes of section 20 (11) . . . of this title." The purpose of § 1013 is plain. Freight forwarders under this section "are required . . . to issue bills of lading to their customers, covering the individual package shipment from time of receipt until delivery to the ultimate consignee." *Chicago, Milwaukee, St. Paul & Pacific Railroad* v. *Acme Fast Freight, Inc.* 336 U. S. 465, 467.[1] And in doing so they become subject to the liability imposed by § 20 (11). But "for the purposes of section 20 (11)" the forwarder "shall

---

[1] This decision contains an illuminating discussion of the law governing freight forwarders both at common law and under the statutes here involved.

be deemed both the receiving and delivering transportation company." This means that the obligations of the forwarder, the "receiving and delivering transportation company," are to be governed by its own bill of lading rather than by one issued by an earlier carrier such as Athol.

But there might be, and frequently are, instances where a freight forwarder would employ a common carrier to bring the shipment from the consignor to the assembly point. Therefore, it is provided in § 1013 that "When the services of a common carrier by motor vehicle subject to chapter 8 of this title are utilized by a freight forwarder for the receiving of property from a consignor in service subject to this chapter, such carrier may, with the consent of the freight forwarder, execute the bill of lading or shipping receipt for the freight forwarder." Relying on the provision just quoted, the plaintiff argues that Athol was acting as the defendant's agent in receiving the shipments from the plaintiff, and that it issued the order bills of lading on behalf of the defendant. Accordingly, it is urged, the defendant is bound by these bills of lading and cannot be heard to say that its liability must be determined under the straight bills which it issued to Athol. We do not agree.

The defendant, as the plaintiff concedes, was a freight forwarder within the definition of U. S. C. (1946 ed.) Title 49, § 1002 (5), and hence was subject to § 1013.[1] Since it does not affect the result, we assume that Athol was "a common carrier by motor vehicle subject to chapter 8" of Title 49, although the evidence on this point was very

---

[1] The business of freight forwarders has been described as follows: "Forwarders utilize common carriers by rail and motor truck to transport goods owned by others. They solicit and obtain many small shipments, from various points within an area, and cause them to be carried in less than truck-load or carload lots to a concentration center within the area. There they are assembled by the forwarder for further transportation in truck-load or carload lots. Although the forwarder gives owners of individual small shipments his own contract corresponding in form to through bills of lading and assumes responsibility for safe through carriage, the forwarder customarily arranges for the pickup, assembly and transportation of the shipments by carriers for hire." *United States* v. *Chicago Heights Trucking Co.* 310 U. S. 344, 345. "At times," however, "collection service at point of origin is not performed by the forwarder's carrier . . . . In such cases, the forwarder's custody of the goods begins at its receiving station instead of at shipper's premises." *Acme Fast Freight, Inc.* v. *United States*, 30 Fed. Sup. 968, 970.

meager. But the plaintiff is not aided by the provision of § 1013 just mentioned. There is no evidence that the defendant ever "utilized" the service of Athol within the meaning of this provision. Nor does it appear that the order bills of lading were issued to the plaintiff by Athol "with the consent," either express or implied, of the defendant. This is the only situation contemplated by § 1013 in which a freight forwarder was to be subjected to liability on a bill of lading not actually issued by it. The plaintiff having failed to bring itself within this exception, the judge rightly ordered a verdict for the defendant.

*Exceptions overruled.*