Frank ZIZZO, doing business under the name of F. & L. Zizzo Company,

v.

RAILWAY EXPRESS AGENCY, Inc.

Civ. A. No. 53-363.

United States District Court
D. Massachusetts.

May 16, 1955.

Roger B. Brooks, Henry Lawlor, Boston, Mass., for plaintiff.

Austin M. Pinkham, Boston, Mass., for defendant.

FORD, District Judge.

This is an action to recover for the loss of value of certain shipments of fresh fish which it is alleged the defendant, a common carrier, negligently failed to transport within a reasonable time.

On December 14, 1951 defendant received from plaintiff in Boston two barrels of fish for transportation to St. Louis, Missouri. On December 19, 1951 defendant received from plaintiff seven barrels and two baskets of fresh fish, and on December 20, 1951 a further shipment of two barrels of fresh fish, both of these shipments for transportation to Detroit, Michigan. On December 20 the December 14 shipment was offered to the consignee at St. Louis, who refused to accept it. On December 26 the other two shipments were offered to the consignee at Detroit, who refused to accept delivery. The reason assigned in each case for refusal to accept delivery was that the shipment arrived too late. The fish was later sold by the carrier for an amount less than the express charges due.

The normal time required for the transportation of perishable merchandise shipped by express from Boston to Detroit was about two days, and for similar transportation to St. Louis was about three days. These shipments left Boston in a car attached to B. & M. Train 63 which was scheduled to leave Boston at 11:55 p. m., on the day on which they were received by defendant, and in fact all these trains left on time or shortly thereafter.

Normally a car with shipments destined for St. Louis and Detroit was taken by the original train via Troy to Rensaleer, where the car had to be shifted to another train which carried it to Buffalo. At Buffalo a shipment for Detroit had to be transferred to another car which was attached to a train for Detroit. Shipments for St. Louis were sent on to their destination from Buffalo via Cleveland and Toledo.

As appears from testimony of defendant's witnesses and official reports of the United States Weather Bureau, the period during which these shipments were on the way to their destination was marked by unusually severe weather conditions, consisting of snowfall, heavy deposits of snow on the ground and prolonged periods of below freezing temperatures. As a result, movement of railway traffic was seriously impeded. Trains were delayed in their movements between stations. At switching yards the accumulation of snow, and the freezing of switches delayed movement of cars, causing a congestion of delayed cars which further hampered operations. Because of the severe cold, it was difficult to maintain a sufficient head of steam in locomotives, and to lighten the load, express cars were cut out of the regular passenger trains to which they were normally attached and had to wait until special trains were made up to move them.

The December 14 shipment passed through the Troy-Albany area on December 15 when the minimum temperature was 11, the maximum was 28 and there were 7 inches of snow accumulated on the ground, 3.1 inches falling that day and 5.7 inches the previous day. At Buffalo on that day the minimum temperature was 9 and maximum was 21, with 6 inches of snow on the ground, 2 inches having fallen that day. The December 14 shipment was consequently several hours late in arriving at Buffalo from which it was shipped on a special train at 9:20 p. m., on December 15 to Cleveland. On the three following days, December 16, 17, and 18, the maximum temperatures at Cleveland were 5, 20, and 32 and the minimum temperatures were −9, −4, and 18. On December 16 there were 13 inches of snow on the ground. This was the greatest accumulation of snow ever recorded by the weather bureau at that point. At Toledo during the period from December 16 through December 19 the temperatures did not go above 31 with temperatures of −10 on December 16 and −8 on December 17, setting new records for those dates. There were 5 inches of snow on the ground on December 16 and 17 with snowfalls raising this accumulation to 10 inches on December 18.

The December 19 shipment reached Troy on December 20 and Buffalo late on December 21. It was sent on to Detroit on the afternoon of December 22 and arrived there on the afternoon of December 24. The December 20 shipment arrived at Troy on December 21 and Buffalo in the early morning of December 22. It left Buffalo on the evening of December 23, and reached Windsor, near Detroit, on December 24. During this period in the Troy-Albany area there were 11 inches of snow on the ground on December 20 and 5 inches on December 21. The temperature on December 20 reached a record minimum of −19. At Buffalo there was cold, stormy weather almost without break from December 11 through December 28. In particular on December 20 and 21 there was a blizzard marked by winds up to 59 miles per hour with rain followed by snow. In Detroit from December 22 through December 24 the temperature was well below freezing for most of the period, with an 8-inch accumulation of snow on the ground, following heavy snowfalls in the preceding week. As a result of these weather conditions trains were delayed at both Buffalo and Detroit, with congestion of traffic in the railroad yards.

On this evidence it must be found that the weather conditions previously described were the sole cause of the delay in transporting plaintiff's shipments to their destination. This extreme weather existed not just at certain points but along the whole route of the shipments. It consisted in a combination of severe cold, snow storms, and accumulation of snow on the ground of unusual severity even for winter weather, in many cases to the extent of setting new records for cold or snow accumulation. It was not a foreseeable adverse weather condition which it was the defendant's duty to guard against, but a condition of such unusual severity as to be considered an act of God. There was no evidence of any negligence on the part of defendant, nor was there anything to show that, in addition to the inevitable delay caused by weather conditions, there was any unreasonable delay in forwarding these shipments to their destination. Such delay as occurred is attributable solely to an act of God, for which defendant cannot be held liable. Nicholas Zeo, Inc. v. Railway Express Agency, Inc., 317 Mass. 374, 58 N.E.2d 127.

Judgment for defendant.