Cowdrey, P.J.
This is an action in contract in which the plaintiff shipper seeks to recover for damage to leather goods which allegedly resulted from the defendant’s failure to make delivery of these goods to a consignee in California.
The case was submitted to the trial court upon a statement of agreed facts. Said facts may be summarized a follows: On November 13, 1979, the plaintiff caused one carton and two bundles of cattle hides to be delivered to the defendant for eventual shipment to California. The defendant is a common carrier or interstate motor carrier subject to the provisions of 49 U.S.C. § 20(11).
The hides were consigned to S & S Leather Goods of Verona, California and were in good condition when received by the defendant. The defendant contracted to ship the hides to the consignee pursuant to a bill of lading which was introduced into evidence in the trial court. This bill of lading expressly provided that the ”[s]hipper hereby certifies that he is familiar with all the terms and conditions of said bill of lading, including those on the back thereof, set forth in the classification or tariff which governs the transportation of this shipment, and the said terms and conditions are hereby agreed to by the shipper and accepted for himself and his assigns.” Section 2(b)- of the National Motor Freight Classification which governed the shipment in question stated:
As a condition precedent 1o recovery, claims must be filed in writing with the.. .carrier in possession of the property when the loss, damage, injury or delay occurred, within nine months after delivery of the property.. .or, in case of failure to make delivery, then within nine months after a reasonable time for delivery has elapsed.. .Where claims are not filed or suits are not instituted thereon in accordance with the foregoing provisions, no carrier hereunder shall be liable, and such claims will not be made.
The parties stipulated that a reasonable time for the delivery of the hides to the named consignee in this action was seven to fourteen days.
The defendant carried the hides to California but failed to make delivery of the same to the consignee, S & S Leather Goods. The hides were retained by the defendant-carrier in its warehouse in San Francisco for over nine months, and were damaged during said period. It is the custom and usage of the trade that a carrier give notice to the shipper of a failure to deliver the goods. o a consignee. The defendant did not notify the plaintiff of its failure to deliver during the nine *342 month period in which the hides were retained at-its warehouse.
On September 5, 1980, the defendant first notified the plaintiff by telephone that it had not delivered the hides to the consignee. On September 8, 1980, the plaintiff instructed the defendant to return the hides to the plaintiff s warehouse in-Peabody, Massachusetts. On September22,1980, the shipment was delivered in Massachusetts and the plaintiff informed the defendant by telephone of the damage to the hides.
On September 23, 1980, the defendant mailed to the plaintiff a “Claimant’s Acknowledgement Letter.” On September 24, 1980, ap employee of the defendant carrier examined the hides at the plaintiff s warehouse and completed an inspection report of the loss sustained. Said report stated that the crushing of the outer containers of the goods had caused the damage; that there were no indications of improper packing, manufacturer’s defects or other factors for which the carrier.would not be liable; that the finished leather was “crushed, wrinkled, warped, discolored and frayed;” that the goods could not be repaired and that the damaged leather hides would have to be discarded.
Five days later, on September 29,1980, the plaintiff filed a written claim of loss with the defendant in the form of a specific response to the defendant’s “Claimant’s Acknowledgment Letter.” The defendant thereafter notified the plaintiff on October 7, 1980 that it would not pay the plaintiffs claim.
The plaintiff had an ongoing business relationship with the consignee, S & S Leather Goods. It was not unusual for S & S to be nine to twelve months in arrears in its payment to the plaintiff for previously shipped hides. In April, 1980, S & S advised the plaintiff by letter that it was suffering financial difficulties and would pay the plaintiff when sufficient funds became available. S & S never informed the plaintiff that it had not received the hides in question.
The fair market value of the leather hides was $3,621.03. The plaintiff never received any payment for these hides from the consignee. The defenndant did not make any payment to the plaintiff as compensation for the damage to the hides.
The trial court entered extensive subsidiary findings of fact, which included the following:
The sole issue before this court is the interpretation of section 2(b) of the National Motor Freight Classification 100H which constitutes a contract between the shipper and carrier....
In the case at bar, there was non-delivery. However, there was no notice to United within the nine month and fourteen day period. It was agreed between the parties that fourteen days at the outside was a reasonable time for delivery... .[the] fundamental reason for the time requirement as a condition precedent for making the claim is to enable the carrier to trace the goods within a reasonable period after delivery or failure to make delivery so as to protect itself from resulting loss. In the case sub judice, Arrow not only did not make delivery, it failed to notify United of the non-delivery until some ten (10) months later, during which time it had maintained possession of the goods in their warehouse in San Francisco....
There was no reason for United to assume non-delivery because of the relationship between S & S Leather Goods and United and the balance of the accounts payable.
This is a classic textbook example of an estoppel en pais where Arrow, but its very acts, prevented any action by United until the time period required as a condition precedent had elapsed....
*343 The trial court found for the plaintiff, United Tanners, Inc. and judgment was entered in the sum of $3,621.03.
The sole question for review in this action is whether the plaintiffs failure to file a written notice of claim of loss within nine months and fourteen days of the defendant’s non-delivery of the leather hides, as mandated by National Motor Freight Classification (Uniform Bill of Lading) Section 2(b), should bar recovery for such loss herein. Stated alternatively, did the defendant’s failure to notify the plaintiff of non-delivery prior to the expiration of the Section 2(b) notice period constitute a waiver of the defendant’s right to require a written notice of claim as a condition precedent to the plaintiff s recovery?
As the parties’ transaction involved interstate shipment, a determination of the parties’ rights and liabilities pursuant to Section 2(b) presents a question of federal substantive law as controlled by the United States Code and federal decisions. Missouri Pac. R.R.Co. v. Elmore & Stabil, 337 U.S. 134, 137, 84 S.Ct. 1142, 1144, 12 L.Ed.2d 194, 197 (1964); Robinson v. Trustees of the N.Y., N.H. & Hart. R.R. Co., 318 Mass. 121, 124 (1945); Nicholas Zeo, Inc. v. Railway Ex. Agency, Inc., 317 Mass. 374, 378 (1944); M. Garcia Co. v. Beacon Fast Freight Co., 1980 Mass. App. Div. 3, 6.
It is established that the doctrines of waiver and estoppel cannot be applied against a defendant-carrier in order to obviate the Section 2(b) requirement of written notice of claim for loss imposed upon a shipper as a condition precedent to recovery. Georgia, Fla. & Ala. Ry. v. Blish Milling Co., 241 U.S. 190, 198, 36 S. Ct. 541, 544 60 L. Ed. 948 (1916). See also Johnson & Dealaman, Inc. v. Wm F. Hegarty Inc., 224 A.2d 510, 514 (N.J. 1966); Thayer v. Pacific Elec. Rwy. Co., 360 P.2d 56, 61 (Ca. 1961). See generally, W. H. Blodgett Co. v. New York Cent. R.R., 261 Mass. 365, 370 (1927); Boston & Me. R. R. v. Nat’l Orange Co., 232 Mass. 351, 353 (1919); Fletcher v. New York Cent. & Hud. R. R., 229 Mass. 258, 262 (1918). This general rule prescinds from the purposes for, and policies underlying, the Uniform Bill of Lading nine month notice of claim provision.. Said provision is obviously intended “to afford the carrier a reasonable opportunity to examine the nature and extent of the damage, determine the merits and validity of the claim and protect itself against possible imposition.” Johnson & Dealaman, Inc. v. Wm F. Hegarty, Inc., supra at 516.
The notice provision of Section 2(b) is also designed, however, “to prevent preferences and discrimnation by carriers as among shippers,” and thus to implement the public policy inherent in the Interstate Commerce Act. Ibid. Laws founded upon public policy cannot be evaded on the grounds of waiver or estoppel when damage to the underlying policy would ensue. See generally, Spence v. Reeder, 382 Mass. 398, 413 (1981).
Thus it is generally held that a carrier cannot waive any obligation resting upon a shipper lest such waiver operate to create a preference in favor of that particular shipper in violation of the plain purpose and policy of the Interstate Commerce Act. Georgia, Fla. & Ala. Ry. Co. v. Blish Milling Co., 227 Mass. 307, 309 (1917). In Chesapeake & Ohio Ry. Co. v. Martin, 283 U.S. 209, 51 S.Ct. 453, 75 L.Ed 983 (1931), the United States Supreme Court held that a carrier’s breach of contract did not excuse a shipper’s failure to submit a timely Section 2(b) notice of claim for loss. The Court stated that the carrier’s misconduct:
cannot succesfully be set up as an estoppel against the claim of a failure to comply with the requirement of the bill of lading here involved. To allow it would be to alter the terms of a contract, made in pursuant of the Interstate Commerce Act and having, in effect, the quality of a statute of limitations, and thus to open the door for evasions of the spirit *344 and purpose of the act to prevent preferences and discrimination in respect of rates and service.
Ibid. at 222; 51 S.Ct. at 458.
We note that the plaintiff has failed to cite a single case which would support a deviation herein from the established federal rule that a shipper’s failure to file a seasonable Section 2(b) notice of claim for loss cannot be excused on the grounds of waiver or estoppel by the conduct of the defendant-carrier. The plaintiff s reliance on Fiske Rubber Co. v. New York, N.H. & Hart. R.R., 240 Mass. 40 (1921) is misplaced. The Supreme Judicial Court dealt therein with the statute of limitations for the institution of suits against carriers and not with a shipper’s failure to submit a timely Section 2(b) notice of claim for loss. The Court in fact expressly declined to consider whether or not torious conduct by the carrier would relieve the shipper from complying with bill of lading requirements governing actions for damaged goods.[1] Moreover, no issue arose in Fiske as to a shopper’s seasonable notice of claim for the simple reason that the shipper therein timely notified the defendant-carrier of its claim pursuant to the then operative six month bill of lading provision.
The Illinois Federal District Court decision in Union Carbide Corp. v. Consolidated R. Corp., 417 F.Supp. 1094 (N.D.Ill. 1981) cited by the plaintiff is also factually inapposite to the case at bar. The defendant-carrier therein made direct and intentional misrepresentations to the shipper as to the continued transit of a derailed shipment, and possessed actual knowledge of all facts concerning shipment damages. Neither of these factors was established in the instant case.
Moreover, the Union Carbide decision of the District Court was mandated by the controlling precedent[2] of its own Court of Appeals decision in Hopper Paper Co. v. Baltimore, 178 F.2d 179 (7 Cir. 1949). The continued value and validity of Hopper as precedent is highly questionable; the decision has been severely criticized or held narrowly to its facte by almost every court beyond the Seventh Circuit. See cases collected in Wisconsin Packing Co. v. Indiana Refrig. Lines, 618 F.2d 441, 452, f. 1 (7 Cir. 1980). Hopper stands for the dubious proposition that a shipper’s failure to give seasonable written notice of a claim is excused “where the carrier has or is chargeable with actual knowledge of all the conditions as to the damages that a written notice would give.” Ibid. at 181. It is sufficient to note, in evaluating Hopper, that the United States Supreme Court had ruled thirty years earlier that a carrier’s actual knowledge of shipment damage was neither a waiver of, nor an excuse for, a shipper’s failure to comply with the nine month notice of claim requirement. Southern Pac. Co. v. Stewart, 248 U.S. 446, 450, 39 S.Ct. 139, 140, 63 L.Ed. 350 (1919). See also Gooch v. Oregon Short Line R. R. Co. 258 U.S. 22, 24, 42 S.Ct. 192, 193, 66 L.Ed. 443 (1922); Perini-North River Assoc. v. Chesapeake & Ohio Ry. Co., 562 F.2d 269, 273 (3 Cir. 1977); Atchison, Topeka & Santa Fe Ry. Co. v. Littleton Leasing Co., 582 F.2d 1237, 1240 (10 Cir. 1978); Rollei of America, Inc. v. T.I.M.E.-DC, Inc., 357 A.2d 33, 35 (N.J. 1976).
The absence of any notification to the plaintiff of the non-delivery of the goods *345 in question cannot be deemed, therefore, to have excused the plaintiff’s failure to submit to the defendant a timely written notice of claim for loss as mandated by Section 2(b) of the national Motor Freight Classification (Uniform Bill of Lading). The requirements of Section 2(b) “cannot be waived and [are] not subject to estoppel.” American Chicle Div., Warner Lab. v. M/v Mayaguez, 540 F. Supp. 166, 168 (S.D. Tex. 1981). See also Calpro Co. v. Consolidated Eng. Co. of Georgia, 502 F.Supp. 707 (D.C.Ga. 1980). As the plaintiff failed to satisfy a condition precedent to its recovery herein, the defendant was entitled to a judgment in its favor as a matter of law.
The trial court’s finding for the plaintiff is vacated. Judgment is to be entered for the defendant.

 The Court stated that "[On view of the conclusion reached, it is unnecessary to decide whether the misdelivery constituted a conversion, and relieved the plaintiff from complying with the above stipulations in the bill of lading.” Ibid. at 45.

 Justice Shadur in Union Carbide stated: “it is true that a number of courts have criticized Hopper _For a District Judge in this Circuit, however, the answer is both short and simple. It is neither permissible nor seemly to engage in the weighing of other authority in the presence of a direct precedent from our Court of Appeals.” Ibid.